Case 5:24-cv-00495-KK-DTB   Document 1-2   Filed 03/06/24   Page 1 of 10   Page ID #:124

Electronically FILED by Superior Court of California, County of Riverside on 09/14/2023 04:02 PM
Case Number CVSW2307766 0000070240295 - Jason B. Galkin, Executive Officer/Clerk of the Court By K. LeBrun, Clerk

DARREN M. HARRIS, Bar No. 190399
**HARRIS GROMBCHEVSKY** LLP
2070 Business Center Drive, Suite 285
Irvine, California 92612
(949) 387-4444 Telephone
(949) 387-4544 Facsimile
dharris@lawfirmhg.com

Attorneys for Plaintiffs, DAWIN LIRANZO GALAN, ROLAND BROCCKO, NOGLEIDYS BROCCKO, and MINERVA RUIZ

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE – UNLIMITED CIVIL

| | |
|---|---|
| DAWIN LIRANZO GALAN; ROLAND BROCCKO; NOGLEIDYS BROCCKO; and MINERVA RUIZ<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>OLIVET UNIVERSITY, a California corporation; TRACY J. DAVIS, an individual; MATTHIAS GEBHARDT, an individual; DAVID JANG, an individual; and DOES 1 to 25<br><br>　　　　Defendants. | CASE NO.  CVSW2307766<br>The Honorable<br>Department<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**HUMAN LABOR TRAFFICKING (VIOLATION OF CALIFORNIA CIVIL CODE §52.5)** |

　　Plaintiffs DAWIN LIRANZO GALAN, ROLAND BROCCKO, NOGLEIDYS BROCCKO, and MINERVA RUIZ (hereinafter collectively referred to as "Plaintiffs"), allege as follows:

### **GENERAL ALLEGATIONS**

　　1.　Plaintiffs are informed and believe, and based thereon allege, that Defendants, and each of them, including DOES 1-25, are, and at all times herein mentioned were, doing business in the County of Riverside, and the City of Anza, including owning,

1
**COMPLAINT FOR DAMAGES**

operating, supervising, and/or overseeing Olivet University, located at 36401 Tripp Flats Road, Anza, California 92539.

2. Defendant OLIVET UNIVERSITY is a California corporation (hereinafter referred to as "OLIVET"). Defendant OLIVET, at times relevant to this Complaint, owned, operated, managed and/or controlled the subject property and were required by law to provide and maintain safe, habitable conditions on the premises.

3. Defendant TRACY J. DAVIS (hereinafter "DAVIS") was at all relevant times herein mentioned the President of OLIVET. Defendant DAVIS also served as the Chairperson for the committee and was the primary administrative leadership appointed by the Board to oversee the daily operations of OLIVET. In accordance with the bylaws, "the University President [DAVIS] shall be the sole official channel of communication between the professional staff and the Board."

4. Defendant MATTHIAS GEBHARDT (hereinafter "GEBHARDT") was at all relevant times the Dean of Olivet Theological College & Seminary and head of the Financial Aid Committee, which was responsible for awarding and issuing scholarships to international students such as the Plaintiffs herein.

5. Defendant DAVID JANG (hereinafter "JANG") is the founder and International President of OLIVET and the leader of the World Olivet Assembly. At all relevant times herein mentioned, Defendant JANG convinced followers and members of the World Olivet Assembly to perform missionary work. However, on information and belief, this so-called missionary work actually led to these persons being forced to perform labor without compensation and under the guise of "scholarship money" at one of JANG's various enterprises, including OLIVET.

6. Plaintiffs are informed and believe and thereon allege that the World Olivet Assembly was founded by Pastor David Jang in 2000, and soon thereafter founded OLIVET in the City of Anza in Riverside County, California.

7. Each of these Defendants were engaged in an illegal plan and scheme to attract so-called students from various countries to attend OLIVET by surreptitiously

offering them "full" scholarships and securing their Visas only to then subject them to various manual labor jobs at OLIVET without pay.  Defendants intended to cause each of the Plaintiffs to believe that failure to perform or provide labor services would result in them owing a debt to OLIVET.

8. Each of these Defendants were engaged in a scheme, plan, or pattern intended to force Plaintiffs (and others) to perform or provide labor services on behalf of the Defendants which were obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the Plaintiffs.

9. Each of the Plaintiffs were offered full scholarships to attend OLIVET, but when they arrived at the Anza campus they were informed that they actually owed OLIVET money and had to work to pay off their debt.  Each of the Plaintiffs were told that they could not leave the campus at any time without first seeking approval from the Defendants.

10. Defendants arranged for the student Visas for each of the Plaintiffs to attend OLIVET from their various countries of origin.

11. At all relevant times, Defendant OLIVET advertised to the public that its mission was to be "an institution of biblical higher education dedicated to training ministry-bound men and women as biblical scholars and leaders, and to equipping them with the practical skills to preach the Gospel effectively into and after the 'network generation' – thus priming them to revolutionize the world through Christian mission." (See https://www.olivetuniversity.edu/aboutolivet/mission.html).

12. Defendant OLIVET promoted its "Institutional Goals" to the public: "As an institution of Biblical higher education that values excellence in academics and professional ministry preparation within the context of a personal relationship with Jesus Christ, Olivet University will

    1. Honor our Bible-based identity and heritage (BIBLICAL TRADITION & PRIDE)

    2. Attain recognition as a world-class institution of Biblical higher education (ACADEMIC EXCELLENCE). . ."

(See https://www.olivetuniversity.edu/aboutolivet/mission.html).

13. At all relevant times, Defendant DAVIS advertised to the public that OLIVET was "a Christian university completely committed to our mission of raising leaders and scholars to fulfill the Great Commission. To this end, each and every one of our programs is intended to instill a love for God's Word, as well as a passion for sharing it with others through missions and ministry. . . . learning at Olivet is a lifelong journey. We emphasize the importance of continuous study in our pursuit of excellence. This is something we value at Olivet University. "
(See https://www.olivetuniversity.edu/aboutolivet/welcome.html).

**Plaintiff DAWIN LIRANZO GALAN:**

14. Plaintiff DAWIN LIRANZO GALAN ("GALAN") attended OLIVET as a student and resided at OLIVET'S Anza campus from March 2017 through June 2017. Plaintiff GALAN was residing in Madrid, Spain and immigrated to the United States to attend OLIVET when OLIVET falsely promised to provide him with a fully paid scholarship which included all tuition, room and board, and all course materials.

15. In Spain, he met the missionary recruiter, Julia Rocha. He then went to OLIVET to study on a promised scholarship.

16. Plaintiff GALAN was assured that he would attend OLIVET on a fully paid scholarship which included all classes and tuition, living expenses, food, his flight to the United States and his Visa documents.

17. When GALAN arrived at OLIVET, Defendants told him that he had no scholarship and that he would be required to work to pay it off.

18. GALAN was forced to work approximately 40 hours per week. He was forced to perform manual labor, including receiving and unloading large containers full of furniture for OLIVET. GALAN also unloaded the furniture items and then assembled them.

19. GALAN never received any money as payment for his labor at OLIVET.

4
**COMPLAINT FOR DAMAGES**

20. In June 2017, GALAN surreptitiously devised a plan by telling OLIVET leaders that his relative in New York was ill and he needed to leave to immediately tend to her needs. He then escaped from OLIVET and fled to New York.

**Plaintiff ROLAND BROCCKO:**

21. Plaintiff ROLAND BROCCKO ("BROCCKO") attended OLIVET as a student and resided at OLIVET'S Anza campus from January 2017 through June 2017. BROCCKO met Julia Rocha in Caracas, Venezuela in June 2015 and she recommended that he participate in missionary training, which BROCCKO completed in 3 weeks. BROCCKO then travelled as a missionary representing the World Olivet Assembly for nearly 2 years in Haiti, Mexico and Paragua. BROCCKO immigrated to the United States to attend OLIVET when OLIVET falsely promised to provide BROCCKO with a fully paid scholarship which included all tuition, room and board, and all course materials.

22. BROCCKO was forced to work at least 40 hours per week. He was forced to perform manual labor, including loading and unloading containers, assembly and construction of offices, painting, etc. In the maintenance department, he did landscaping on campus. He also worked in the dining room kitchen as a kitchen assistant, did cleaning, washed dishes, etc.

23. BROCCKO never received any money as payment for his labor at OLIVET.

**Plaintiff NOGLEIDYS ACOSTA:**

24. Plaintiff NOGLEIDYS BROCCKO (used maiden name ACOSTA at Olivet) ("ACOSTA") attended OLIVET as a student and resided at OLIVET'S Anza campus from December 2016 through June 2017. Plaintiff ACOSTA was residing in Venezuela and immigrated to the United States to attend OLIVET when OLIVET falsely promised to provide ACOSTA with a fully paid scholarship which included all tuition, room and board, and all course materials.

25. ACOSTA was forced to work at least 40 hours per week. She was forced to take care of children in the nursery. These were children of the managers and other students who lived on campus.

26. ACOSTA did not receive any money as payment for her childcare or nursery services.

27. In June 2017, Pastor Juan Pablo Segura, one of the pastors who worked at OLIVET devised a plan to help BROCCKO and ACOSTA flee the Anza campus to escape from OLIVET. Pastor Segura purchased the airplane tickets for BROCCKO and ACOSTA and told the leaders that they would be going on summer vacation. Pastor Segura transported BROCCKO and ACOSTA to the airport in San Diego, California. Plaintiffs BROCCKO and ACOSTA fled to New York and stayed with Plaintiff GALAN.

**Plaintiff MINERVA RUIZ:**

28. Plaintiff MINERVA RUIZ ("RUIZ") attended OLIVET as a student and resided at OLIVET'S Anza campus from January 2017 through June 2017. Plaintiff RUIZ was residing in Venezuela and immigrated to the United States to attend OLIVET when OLIVET falsely promised to provide RUIZ with a fully paid scholarship which included all tuition, room and board, and all course materials.

29. RUIZ was forced to work at least 40 hours per week. She performed manual labor jobs including gardening around the campus, housekeeping, filing papers, laundry services, and help in the kitchen.

30. As part of her "duties" RUIZ was forced to clean Defendant JANG's residence, which was located off campus at a nearby location.

31. RUIZ never received any money as payment for her labor at OLIVET.

**Other Students Who Attended OLIVET Since 2016:**

32. Plaintiffs are informed and believe that there are many other students who attended OLIVET within the past seven (7) years who are in the same situation

6
**COMPLAINT FOR DAMAGES**

33. Plaintiffs are informed and believe that in approximately March 2018, law enforcement began investigating OLIVET about its treatment of its students. In March 2018, a female student (Rebecca Singh) called 911 and complained that she had not been allowed to leave the Anza campus for months.

34. While Plaintiffs attended OLIVET, Rebecca Singh was a student at OLIVET living in a camper on the Anza campus. Plaintiffs are informed and believe that Ms. Singh reported to law enforcement that there were "300 Asian men and women" living five to six people per room in campus buildings.

35. Plaintiffs are informed and believe that Ms. Singh escaped from the Anza campus with secret assistance from an OLIVET employee.

36. In committing the acts complained of herein, each of the Defendants, including DOES 1-25, acted as an authorized agent, employee, or representative of each other Defendants. Each act of each of the Defendants complained of herein was committed within the scope of the said agency, employment, or other representation, and/or each act was ratified by each of the other Defendants. Additionally, each and every act or omission by an employee was conducted by a managing agent and/or was authorized, ratified, approved and/or directed by an officer, director and/or managing agent of the corporation. Each of the Defendants is liable, in whole or in part, for the damages and injuries suffered by Plaintiffs.

37. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-25. Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of such Defendants, when ascertained.

## CAUSE OF ACTION

### HUMAN TRAFFICKING IN VIOLATION OF CALIFORNIA *CIVIL CODE* §52.5
### AGAINST ALL DEFENDANTS

38. Plaintiffs reallege and incorporate all previous paragraphs of this Complaint as though fully set forth herein.

39. California *Civil Code* §52.5 provides in relevant part as follows:

> "(a) A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs.
>
> (b) In addition to the remedies specified in this section, in an action under subdivision (a), the plaintiff may be awarded up to three times his or her actual damages or ten thousand dollars ($10,000), whichever is greater. In addition, punitive damages may be awarded upon proof of the defendant's malice, oppression, fraud, or duress in committing the act of human trafficking.
>
> (c) An action brought pursuant to this section shall be commenced within seven years of the date on which the trafficking victim was freed from the trafficking situation or, if the victim was a minor when the act of human trafficking against the victim occurred, within 10 years after the date the plaintiff attains the age of majority. . .
>
> (f) A prevailing plaintiff may also be awarded reasonable attorney's fees and litigation costs including, but not limited to, expert witness fees and expenses as part of the costs."

40. California *Penal Code* §236.1(a) states, "A person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking…"

41. Defendants were engaged in illegal human trafficking against each of the Plaintiffs herein.

42. Defendants were engaged in a scheme, plan, or pattern intended to cause each of the Plaintiffs to believe that failure to perform or provide labor services would result in debt bondage. See *Penal Code* §236.1(h)(1).

43. Defendants were engaged in a scheme, plan, or pattern intended to force Plaintiffs to perform or provide labor services on behalf of the Defendants which were obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the Plaintiffs. See *Penal Code* §236.1(h)(5).

44. Plaintiffs are informed and believe that Defendant OLIVET's managing agents knew of the illegal conduct alleged herein and refused to take any action, and hid the information so that OLIVET would continue to benefit and profit from the forced labor performed by these Plaintiffs and others. Plaintiffs are informed and believe that Defendant OLIVET's managing agents condoned and ratified the actions of its employees by allowing Plaintiffs and others to continue working despite knowing that these services were unpaid and illegal.

45. As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiffs have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their general damage in an amount to be proven at trial.

46. As a result of the actions of Defendants, Plaintiffs have sustained general and special damages in a sufficient sum to be awarded by the trier of fact at the time of trial herein.

47. By reason of the facts which have been set forth herein, and by reason of the authorizations and ratifications between the Defendants, these Defendants, have acted maliciously, despicably, oppressively, and fraudulently toward Plaintiffs and in willful and conscious disregard of their rights to an extent which is unknown to Plaintiffs at this time but is well known to Defendants. That by reason of the foregoing, Plaintiffs demand punitive and exemplary damages from Defendants in a sufficient sum to be awarded by the trier of fact at the time of trial herein.

48. Plaintiffs are also entitled to an award of three (3) times their actual damages against each of the Defendants.

49. Plaintiffs are also entitled to an award of attorneys' fees against each of the Defendants.

50. Plaintiffs are also entitled to an award of litigation costs and expert witness fees and expenses against each of the Defendants.

# PRAYER

WHEREFORE, Plaintiffs pray for Judgment against Defendants and each of them as follows:

1. Actual damages in an amount to be proven at trial;
2. General damages for emotional distress, in an amount to be proven at trial;
3. Costs of suit incurred herein;
4. Attorneys' fees;
5. An award of three times (3x) actual damages;
6. An award of litigation costs and expert witness fees and expenses; and,
7. For such other and further relief as the Court may deem just and proper.

# JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues.

DATED: September 14, 2023                HARRIS GROMBCHEVSKY LLP

BY: _____
DARREN M. HARRIS
Attorneys for Plaintiffs